# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AJ RUIZ CONSULTORIA EMPRESARIAL S.A., solely as Judicial Administrator and foreign representative of SCHAHIN HOLDING S/A; AGROPECUÁRIA ALTO DO TURIASSÚ LTDA; AGROPECUÁRIA MARANHENSE S/A; ÂMBAR EMPREENDIMENTOS E PARTICIPAÇÕES S/C LTDA; AQUÁTICA COMUNICAÇÕES LTDA; BASE ENGENHARIA E SERVIÇOS DE PETRÓLEO E GÁS S/A; BASE PETRÓLEO E GAS S/A; COMPANHIA MS DE PARTICIPAÇÕES; COMPANHIA SCHAHIN DE ATIVOS; COMPANHIA SCHAHIN SECURITIZADORA DE CRÉDITOS FINANCEIROS S/S LTDA; CONSTRUTORA MOGNO LTDA; DEEP BLACK DRILLING LLP; FOXBOROUGH PARTICIPAÇÕES LTDA; HABITÉCNICA PARTICIPAÇÕES S/A; HABITÉCNICA S/A EMPREENDIMENTOS IMOBILIÁRIOS, ADMINISTRAÇÃO E PLANEJAMENTO; HBF PARTICIPAÇÕES LTDA; HHS PARTICIPAÇÕES S/A; INTELIS AUTOMAÇÃO E CONTROLE LTDA; MTS PARTICIPAÇÕES LTDA; S&S HOLDING ELÉTRICA S/A; S2 PARTICIPAÇÕES LTDA; SATASCH PARTICIPAÇÕES LTDA; SCH 14 SONDAS DE PRODUÇÕES MARÍTIMAS S/A; SCH07 PARTICIPAÇÕES LTDA; SCH08 PARTICIPAÇÕES LTDA; SCH13 PARTICIPAÇÕES LTDA; SCH15 PARTICIPAÇÕES LTDA; SCHAHIN ADMINISTRAÇÃO E INFORMÁTICA LTDA; SCHAHIN ATIVOS COMPANHIA SCHAHIN SECURITIZADORA DE CRÉDITOS FINANCEIROS S/A; SCHAHIN CAPITAL SPE 1 S/A; SCHAHIN CAPITAL SPE 2 S/A; SCHAHIN DESENOLVIMENTO IMOBILIÁRIO S/A; SCHAHIN EMPREENDIMENTOS IMOBILIÁRIOS LTDA; SCHAHIN ENERGIA S/A; SCHAHIN PARTICIPAÇÕES LTDA; SCHAHIN | Case No. 21-cv-6020<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

SECURITIZADORA DE CRÉDITOS
FINANCEIROS S/A; and SM
PARTICIPAÇÕES S/A,

                         Plaintiff,

        v.

BANK OF CHINA LIMITED; CHINA
DEVELOPMENT BANK; DEXIA CRÉDIT
LOCAL SA, NEW YORK BRANCH;
INTERNATIONAL FINANCE
CORPORATION; KFW; and PORTIGON AG,
NEW YORK BRANCH,

                      Defendants.

Plaintiff AJ Ruiz Consultoria Empresarial S.A., solely as Judicial Administrator and

foreign representative of Schahin Holding S/A; Agropecuária Alto Do Turiassú Ltda;

Agropecuária Maranhense S/A; Âmbar Empreendimentos E Participações S/C Ltda; Aquática

Comunicações Ltda; Base Engenharia E Serviços De Petróleo E Gás S/A; Base Petróleo E Gas

S/A; Companhia Ms De Participações; Companhia Schahin De Ativos; Companhia Schahin

Securitizadora De Créditos Financeiros S/S Ltda; Construtora Mogno Ltda; Deep Black Drilling

LLP; Foxborough Participações Ltda; Habitécnica Participações S/A; Habitécnica S/A

Empreendimentos Imobiliários, Administração E Planejamento; HBF Participações Ltda; HHS

Participações S/A; Intelis Automação E Controle Ltda; MTS Participações Ltda; S&S Holding

Elétrica S/A; S2 Participações Ltda; Satasch Participações Ltda; SCH 14 Sondas De Produções

Marítimas S/A; SCH07 Participações Ltda; SCH08 Participações Ltda; SCH13 Participações

Ltda; SCH15 Participações Ltda; Schahin Administração E Informática Ltda; Schahin Ativos

Companhia Schahin Securitizadora De Créditos Financeiros S/A; Schahin Capital SPE 1 S/A;

Schahin Capital SPE 2 S/A; Schahin Desenvolvimento Imobiliário S/A; Schahin

Empreendimentos Imobiliários Ltda; Schahin Energia S/A; Schahin Participações Ltda; Schahin

Securitizadora De Créditos Financeiros S/A; and SM Participações S/A (collectively, creditors of

the "Schahin Group" or "Group"), brings this suit on behalf of and for the benefit of creditors of

the estate against Defendants Bank of China Limited; China Development Bank; Dexia Crédit

Local SA, New York Branch; International Finance Corporation; KfW; and Portigon AG, New

York Branch, stating as follows:

<b>NATURE OF THE CASE</b>

1.      Plaintiff brings a claim for unjust enrichment on behalf of thousands of creditors

of the Schahin Group – a Brazilian oil and gas conglomerate with subsidiaries around the world,

including in the United States – to recover more than $310 million that Defendants unlawfully

obtained at those creditors' expense.

2.      Defendants were creditors of the Schahin Group as well, having loaned several

Schahin Group subsidiaries capital in 2007 and 2009 to build two large semi-submersible oil

drilling rigs, the *Amazonia* and *Pantanal*.  Those rigs were critical to the Schahin Group's

operations.

3.      By 2013 and 2014, the Schahin Group was struggling financially.  A court in this

District even held five of its entities in contempt when they failed to pay some $60 million an

arbitral panel had awarded to the companies that built the *Amazonia* and *Pantanal*.

4.      In September 2014, with the Schahin Group in financial distress, Defendants

participated in a complex sale-leaseback transaction in which the Schahin Group sold the two

rigs to a Chinese bank, which immediately leased them back to the Schahin Group.  The bulk of

the sale proceeds were then distributed to Defendants and other financiers of the rigs as

repayment of their loans.

5.      Defendants knew that they were materially impairing the Schahin Group's ability to remain a going concern.  In essence, they liquidated the company's key assets, took the proceeds, and left the other creditors holding debt of a crippled company that had no prospect of repaying it.

6.      Not only was Defendants' conduct inequitable, but the transaction violated Brazilian law.  When a company proposes to sell an asset that is material to its ongoing viability, Brazilian law provides important protections to the company's creditors:  the Schahin Group was required to obtain the consent of all of its creditors or pay its debts before making the sale.  The Schahin Group did neither, and Defendants knew that the sale violated Brazilian law.  Nonetheless, they proceeded with the transaction because it allowed them to obtain repayment of their loans.

7.      Just a few months later, in April 2015, having been stripped of its critical assets by Defendants, the Schahin Group filed for reorganization in Brazil.  In March 2018, the Brazilian court converted the reorganization into a bankruptcy.  Today, thousands of Schahin Group creditors remain unpaid – while Defendants' debts were fully satisfied.

8.      The agreement under which Defendants were paid and the original financing agreements all provided that "any legal action or proceeding with respect to" the agreements could proceed in this District.  This Court is thus the proper venue for seeking the return of the money Defendants wrongly obtained, so it can be distributed among all of the Group's creditors consistent with Brazilian law.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) because one or more of the Defendants is a foreign state as defined in 28 U.S.C. § 1603(a). Immunity does not apply under 28 U.S.C. § 1605(a)(2), because Defendants have waived their

immunity.  Immunity also does not apply under 28 U.S.C. § 1605(a)(2), because this action is based upon Defendants' commercial activity carried on in the United States, upon an act performed in the United States in connection with a commercial activity of Defendants elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of Defendants elsewhere and that act caused a direct effect in the United States.

10.     This Court has subject matter jurisdiction against any Defendant that is not a foreign state as defined in 28 U.S.C. § 1603(a) pursuant to both 28 U.S.C. § 1330(a) and 28 U.S.C. § 1367(a).

11.     In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b), because this is a civil proceeding related to a case under title 11, *In re Schahin Holding S.A.*, No. 19-19932 (Bankr. S.D. Fla.) (Miami Division) (Chapter 15).[1]

12.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District.  Among other things, all of the wire transfers through which the Defendants were unjustly enriched were made from a New York bank account.  The wire transfers through which at least Defendants International Finance Corporation; KfW; and Portigon AG, New York Branch, were unjustly enriched were also made to New York bank accounts.

13.     In addition, Defendants consented to venue in this District.  The wire transfers were made pursuant to contracts providing that "any legal action or proceeding with respect to this agreement . . . may be brought in the courts . . . of the United States of America for the

---

[1] In the event this case is referred to the bankruptcy court, Plaintiff does not consent to entry of final orders or judgment by the bankruptcy court.

Southern District of New York."  Each contract also provided that each party to it "accepts . . . generally and unconditionally, the non-exclusive jurisdiction of the aforesaid [Southern District of New York] courts."  Every Defendant was a party to such a contract.

## PARTIES

14.     Plaintiff AJ Ruiz Consultoria Empresarial S.A. has its principal place of business at Rua Lincoln Albuquerque, No. 259, 13th Floor, Suite 131, São Paulo, Brazil 05004-010.  It appears solely as Judicial Administrator and foreign representative of Schahin Holding S/A; Agropecuária Alto Do Turiassú Ltda; Agropecuária Maranhense S/A; Âmbar Empreendimentos E Participações S/C Ltda; Aquática Comunicações Ltda; Base Engenharia E Serviços De Petróleo E Gás S/A; Base Petróleo E Gas S/A; Companhia Ms De Participações; Companhia Schahin De Ativos; Companhia Schahin Securitizadora De Créditos Financeiros S/S Ltda; Construtora Mogno Ltda; Deep Black Drilling LLP; Foxborough Participações Ltda; Habitécnica Participações S/A; Habitécnica S/A Empreendimentos Imobiliários, Administração E Planejamento; HBF Participações Ltda; HHS Participações S/A; Intelis Automação E Controle Ltda; MTS Participações Ltda; S&S Holding Elétrica S/A; S2 Participações Ltda; Satasch Participações Ltda; SCH 14 Sondas De Produções Marítimas S/A; SCH07 Participações Ltda; SCH08 Participações Ltda; SCH13 Participações Ltda; SCH15 Participações Ltda; Schahin Administração E Informática Ltda; Schahin Ativos Companhia Schahin Securitizadora De Créditos Financeiros S/A; Schahin Capital SPE 1 S/A; Schahin Capital SPE 2 S/A; Schahin Desenvolvimento Imobiliário S/A; Schahin Empreendimentos Imobiliários Ltda; Schahin Energia S/A; Schahin Participações Ltda; Schahin Securitizadora De Créditos Financeiros S/A; and SM Participações S/A.

15.     Defendant Bank of China Limited is a company organized and existing in the People's Republic of China with its principal place of business at No. 1 Fuxingmen Nei DaJie,

Beijing, China 100818.  In the United States, Bank of China Limited maintains branches in California, Illinois, and New York.  The New York branch is located at 1045 Avenue of the Americas, New York, New York 10018.

16.     Defendant China Development Bank, formerly known as China Development Bank Corporation Limited, is a limited liability company organized and existing under the laws of People's Republic of China with its principal place of business at No. 18 Fuxingmennei Street, Xicheng District, Beijing, China 100031.

17.     Defendant Dexia Crédit Local SA, New York Branch, is a branch of a company organized and existing under the laws of the Republic of France with its principal place of business at Tour CBX-La Défense 2, 1 Passerelle des Reflets, Paris La Défense Cedex, France. The New York branch is located at 445 Park Avenue, New York, New York 10022.

18.     Defendant International Finance Corporation is an international organization established by its member countries, including the United States.  International Finance Corporation maintains its principal place of business at 2121 Pennsylvania Avenue, N.W., Washington, D.C. 20433.

19.     Defendant KfW, also known as Kreditanstalt für Wiederaufbau, is an institution organized and existing under the laws of the Federal Republic of Germany with its principal place of business at Palmengartenstrasse 5-9, 60325 Frankfurt am Main, Germany.

20.     Defendant Portigon AG, New York Branch, is a branch of a Portigon AG, a company organized and existing under the laws of the Federal Republic of Germany with its principal place of business at Völklinger Strasse 4, 40219 Düsseldorf, Germany.  Portigon AG, New York Branch is located at 589 8th Avenue, 2nd Floor, New York, New York 10018.

## STATEMENT OF FACTS

### *The Schahin Group*

21.     In approximately 1966, brothers Milton and Salim Schahin founded a group of companies in Brazil (the Schahin Group) that they operated as a single unit as an economic matter.  For example, at times the Schahin Group holding companies took out loans that they used to repay operating subsidiaries' debts.  The Schahin Group invested in several industries over time, but it has focused on oil and gas since approximately 2010.  Several Schahin Group entities are relevant here.

22.     Schahin Holding S/A ("Schahin Holding") is a Brazilian entity, the ultimate owners of which are the Schahin brothers.

23.     Schahin Engenharia S/A ("Schahin Engenharia") (now known as Base Engenharia e Serviços de Petróleo e Gás S.A.) is a Brazilian entity majority-owned by Schahin Holding S/A.

24.     Sea Biscuit International Inc. ("Sea Biscuit") is a British Virgin Islands entity, the ultimate owners of which are the Schahin brothers.  Sea Biscuit is a holding company whose primary activity is the ownership of Black Gold Drilling LLC ("Black Gold").

25.     Black Gold is a Delaware entity wholly owned by Sea Biscuit.  It is a special purpose vehicle whose primary activity is the ownership of Baerfield Drilling LLC ("Baerfield") and Soratu Drilling LLC ("Soratu").

26.     Baerfield is a Delaware entity wholly owned by Black Gold.  It is a special purpose vehicle that owned the *Amazonia*.

27.     Soratu is a Delaware entity wholly owned by Black Gold.  It is a special purpose vehicle that owned the *Pantanal*.

28.     Schahin Engenharia identified Baerfield and Soratu as related parties in its financial statements.  Milton Schahin's son, Fernando Schahin, served as chief financial officer of the Schahin Group, Schahin Holding, Schahin Engenharia, Sea Biscuit, Black Gold, Baerfield, and Soratu.

### *The Schahin Group Finances the Rigs*

29.     In October 2007, Black Gold entered an agreement (the "Credit Agreement") with 14 financial institutions under which the institutions would lend Black Gold $800 million for the construction of two semi-submersible drilling rigs, the *Amazonia* and the *Pantanal*.

30.     The *Amazonia* was owned by Baerfield, and the *Pantanal* by Soratu.  Petróleo Brasileiro S/A ("Petrobras") chartered the *Amazonia* from Baerfield and retained Schahin Engenharia to operate it.  Baerfield and Schahin Engenharia each signed the other's contract with Petrobras, and both companies were jointly and severally liable under both contracts.  Similarly, Petrobras chartered the *Pantanal* from Soratu and retained Schahin Engenharia to operate it. Soratu and Schahin Engenharia each signed the other's contract with Petrobras, and both companies were jointly and severally liable under both contracts.  Milton Schahin signed all four contracts on behalf of Schahin Engenharia, and Milton and Salim Schahin together signed all four contracts on behalf of Baerfield or Soratu, as applicable.

31.     The lenders under the Credit Agreement included Defendants China Development Bank; Dexia Crédit Local SA, New York Branch; KfW; and Portigon AG, New York Branch (at the time known as WestLB AG, New York Branch).

32.     Defendant Portigon AG, New York Branch (at the time known as WestLB AG, New York Branch) served as Administrative Agent under the Credit Agreement.

33.     Baerfield, Soratu, and Schahin Engenharia agreed with the lenders' collateral agent that the charter and service agreements for the *Amazonia* and *Pantanal* would serve as collateral for Baerfield's and Soratu's obligations under the Credit Agreement.

34.     Black Gold and its lenders under the Credit Agreement amended and restated that agreement in December 2009 (the "Amended Credit Agreement").

35.     By then there were 18 lenders.  They included Defendants China Development Bank (then known as China Development Bank Corporation); Dexia Crédit Local SA, New York Branch; International Finance Corporation; KfW; and Portigon AG, New York Branch (at the time known as WestLB AG, New York Branch).

36.     Defendant Portigon AG, New York Branch (at the time known as WestLB AG, New York Branch) remained the Administrative Agent under the Amended Credit Agreement.

37.     Once again, Baerfield, Soratu, and Schahin Engenharia agreed with the lenders' collateral agent that the charter and service agreements for the *Amazonia* and *Pantanal* would serve as collateral for Baerfield's and Soratu's obligations under the Amended Credit Agreement.

38.     The Credit Agreement and Amended Credit Agreement each provided that "any legal action or proceeding with respect to this agreement . . . may be brought in the courts . . . of the United States of America for the Southern District of New York."  Each agreement also provided that each party to it "accepts . . . generally and unconditionally, the non-exclusive jurisdiction of the aforesaid [Southern District of New York] courts."  Each agreement also provided in all-caps that "this agreement . . . shall be governed by, and construed in accordance with, the law of the State of New York excluding choice of law principles of such laws which would require the application of the laws of a jurisdiction other than the State of New York."

### *The Schahin Group is Financially Distressed*

39.     By mid-2014, Defendants knew or should have known that the Schahin Group was in financial distress and that it had other creditors.

40.     In January 2013, the Singapore shipbuilder that built the *Amazonia* and *Pantanal* (along with a subsidiary) sued Schahin Holding, Schahin Engenharia, Sea Biscuit, Black Gold, Baerfield, and Soratu in a publicly filed complaint in this District for confirmation of a $69.4 million arbitration award.  The arbitration arose out of the Schahin Group entities' failure to repay loans they had obtained from the shipbuilder.

41.     In February 2013, Schahin Oil & Gas Ltd., a Schahin Group entity and the sole owner of Sea Biscuit's sole owner, cancelled a $685 million U.S. bond issue it had planned.  The cancellation was reported by the media.

42.     In April 2013, Defendant Portigon AG, New York Branch (in its role as Administrative Agent for the lenders on the Amended Credit Agreement), appeared in the above-referenced arbitration award confirmation proceedings in this District, arguing that certain Schahin Group assets could not be used to repay the shipbuilder because they were reserved for repayment of the lenders on the Amended Credit Agreement.

43.     Defendant Portigon AG, New York Branch, told the Court that the *Amazonia* and *Pantanal* did not generate enough money to make Black Gold's monthly payments under the Amended Credit Agreement, or to pay Schahin Engenharia to operate the rigs.  Black Gold, Baerfield, and Soratu agreed.  Black Gold, Baerfield, and Soratu also stated that Schahin Engenharia was supposed to pass the payments it received on to the persons and entities providing insurance, goods, and services needed to operate the rigs.

44.     The Court eventually ordered Schahin Engenharia, Schahin Holding, Black Gold, Baerfield, and Soratu to pay the sum that had been awarded in arbitration.  By September 2013,

they had paid only approximately $10 million, and the Court held all five entities in contempt.

The following month, October 2013, Petrobras paid the balance on the Schahin Group entities'

behalf – in effect substituting itself as a creditor.

45.     The Schahin Group's finances did not improve.  In January 2014, Fitch Ratings

downgraded its publicly disclosed rating outlook for Schahin Oil & Gas Ltd. from stable to

negative, noting the Schahin Group's failure to obtain permanent long-term financing at the

holding company level.  In April 2014 Standard & Poor's Ratings Services publicly issued a

negative outlook as well.

### *The Schahin Group Executes the Sale-Leaseback*

46.     In September 2014, the Schahin Group paid off Defendants at the expense of the

rest of its creditors.  Baerfield and Soratu sold the *Amazonia* and *Pantanal* to subsidiaries of the

Industrial and Commercial Bank of China and promptly delivered the sale proceeds to

Defendants.  The Industrial and Commercial Bank of China Ltd., New York Branch leased the

rigs back to Baerfield and Soratu, but the bank kept the bulk of the proceeds of the rigs'

operation for itself.

47.     To settle the rig financing debts, on September 12, 2014, Black Gold and its

lenders under the Amended Credit Agreement entered an agreement (the "Assignment

Agreement") under which the lenders assigned Black Gold's debts to Black Gold's parent, Sea

Biscuit, and Sea Biscuit agreed to pay the outstanding principal on the assigned loans while

Black Gold agreed to pay unpaid interest, approximately $565 million in total.

48.     The Assignment Agreement stated that all of the lenders joining it were parties to

the Amended Credit Agreement.  The lenders joining the Assignment Agreement included

Defendants Bank of China; China Development Bank (then known as China Development Bank

Corporation); Dexia Crédit Local SA, New York Branch; International Finance Corporation; KfW; and Portigon AG, New York Branch.

49.     Both the Credit Agreement and the Amended Credit Agreement required Black Gold to obtain protection against interest rate and exchange rate fluctuations.  The Assignment Agreement required Black Gold to pay its obligations under the agreements it entered to obtain this protection.  At the time of the sale-leaseback transaction, Black Gold owed Defendant Portigon AG, New York Branch, more than $9 million in total under such agreements.

50.     To make the payments required by the Assignment Agreement, Black Gold directed that the amounts due under the Amended Credit Agreement be wired on September 12, 2014, from a New York bank account to accounts for each of the assigning lenders.  At least Defendants International Finance Corporation; KfW; and Portigon AG, New York Branch, received their payments at New York bank accounts.  Because of the Assignment Agreement, Defendants were repaid for their loans under the Amended Credit Agreement sooner than they would have been otherwise.

51.     Consistent with the Assignment Agreement, Black Gold also directed that the amounts due to Defendant Portigon AG, New York Branch, under their interest rate and exchange rate protection agreements be wired to it.  These transfers too were made from a New York bank account to a New York bank account.

52.     All of these payments were made using the proceeds of the sale of the *Amazonia* and *Pantanal*.

53.     Defendants received proceeds of the sale, ranging from approximately $33.8 million to approximately $106 million, depending on the Defendant.

54.     The Assignment Agreement provided that "any legal action or proceeding with respect to this agreement . . . may be brought in the courts . . . of the United States of America for the Southern District of New York."  It also provided that each party to it "accepts . . . generally and unconditionally, the non-exclusive jurisdiction of the aforesaid [Southern District of New York] courts."  It also provided that "[t]his Agreement shall be construed in accordance with and governed by the law of the State of New York."

### The Schahin Group Enters Bankruptcy

55.     The diversion of the sale proceeds and the loss of the revenue from the *Amazonia* and *Pantanal* contributed to the Schahin Group's worsening finances.  On April 17, 2015, a number of Schahin Group entities filed for reorganization in Brazil.  On May 4, 2015, the Brazilian bankruptcy court ordered that nine Schahin Group entities be reorganized.  The nine included Schahin Engenharia and Schahin Holding.

56.     On March 1, 2018, the Brazilian bankruptcy court converted the reorganization into a bankruptcy proceeding as a result of the debtors' failure to comply with and make required payments under the reorganization plan.  The court also appointed KPMG Corporate Finance Ltda. ("KPMG"), represented by Osana Mendonça, as judicial administrator.

57.     Under Brazilian law, the judicial administrator acts not solely on behalf of the bankrupt estate, but also on behalf of and for the benefit of its creditors.  It does not represent or act on behalf of the company itself or its former management.

58.     On July 26, 2019, KPMG filed a petition in the Southern District of Florida for recognition of a foreign proceeding under Chapter 15 of the Bankruptcy Code.  *See In re Schahin Holding S.A.*, No. 1:19-bk-19932 (Bankr. S.D. Fla.) ("*Schahin Holding*").

59.     On August 21, 2019, the United States Bankruptcy Court for the Southern District of Florida granted recognition to the Brazilian proceedings as a foreign main proceeding under 11 U.S.C. § 1517, found that KPMG qualified as a foreign representative under 11 U.S.C. § 101(24), and authorized KPMG to exercise the powers of a trustee under 11 U.S.C. §§ 363 and 552.  *See* ECF No. 9, *Schahin Holding*.

60.     On October 21, 2019, the United States Bankruptcy Court for the Southern District of Florida approved an amended petition adding an additional 28 debtors that had been recognized in the Brazilian bankruptcy proceeding.  *See* ECF No. 19, *Schahin Holding*.

61.     On September 22, 2020, Mendonça notified the United States Bankruptcy Court for the Southern District of Florida that AJ Ruiz Consultoria Empresarial S.A., represented by Joice Ruiz Bernier, had replaced KPMG, represented by Mendonça, as judicial administrator for the Brazilian debtors.  *See* ECF No. 59, *Schahin Holding*.

### *Sale of Establishment Under Brazilian Law*

62.     Brazilian law refers to a business's source of income as its establishment (or premises).  Brazilian bankruptcy law provides that the sale or transfer of an establishment (or premises) is ineffective if made without the express consent or payment of all then-existing creditors, when the debtor is left, after the sale or transfer, with insufficient assets to pay its liabilities.

63.     At the time of the sale-leaseback, the Schahin Group owned five oil rigs:  the *Amazonia*, *Pantanal*, *Lancer*, *Sertão*, and *Cerrado*.  The Group's only other significant source of income was the oil rig *Vitória 10,000*, which the Schahin Group leased from Petrobras.

64.     Under these circumstances, the *Amazonia* and *Pantanal*, individually and together, were an establishment, and the Schahin Group was required to obtain the consent of all

of its creditors or pay all of its debts before selling them, if doing so would leave it unable to pay its liabilities.  The Schahin Group did not obtain its creditors' consent or pay its debts before selling the rigs.

65.     After selling the *Amazonia* and *Pantanal*, the Schahin Group did not have sufficient assets to pay its liabilities, as demonstrated by, among other things, its filing for reorganization just a few months after the transaction.

## CLAIM FOR RELIEF

### *Unjust Enrichment*

66.     The allegations of paragraphs 1 through 65 above are incorporated as though fully set forth herein.

67.     Each Defendant was enriched as a result of the sale of the *Amazonia* and *Pantanal* and the related transactions described above.

68.     Defendants received proceeds of the sale, ranging from approximately $33.8 million to approximately $106 million, depending on the Defendant.

69.     Defendant Portigon AG, New York Branch, received money under its interest rate and exchange rate protection agreements.

70.     Each Defendant was enriched at the expense of the Schahin Group's other creditors, on whose behalf and for whose benefit Plaintiff now acts.

71.     If not for the payments to Defendants, the Schahin Group may have been able to avoid bankruptcy and pay its creditors.  Even if the Schahin Group had nonetheless entered bankruptcy, the *Amazonia* and *Pantanal* would have been sold and their value would have been divided among the Schahin Group's creditors according to Brazilian bankruptcy law, rather than being diverted solely to Defendants and the rigs' other financiers.

72.     It is against equity and good conscience to permit Defendants to retain the proceeds of the sale of the *Amazonia* and *Pantanal*.

73.     The Schahin Group's other creditors were entitled to rely on Defendants not to participate in transactions in which they obtained the proceeds of the sale of the company's key assets, leaving the other creditors with a financially unviable company that declared bankruptcy shortly thereafter.  Defendants knew that Baerfield and Soratu were special purpose vehicles that were part of the Schahin Group and ultimately owned by the Schahin brothers.  This knowledge is demonstrated by, among other things, Defendants' including Schahin Engenharia in the agreements securing Baerfield's and Soratu's debts.  All of the Schahin Group's creditors knew or should have known the obligations and protections established by Brazilian law.  Defendants were aware of the other creditors, and of the Schahin Group's financial distress, as demonstrated by, among other things, Defendants' participation in the 2013 litigation in this District involving the builder of the rigs.  Defendants also knew or should have known about Schahin Oil & Gas Ltd.'s cancelled bond offering and ratings downgrades.

74.     Defendants, as Schahin Group creditors themselves, knew that the creditors were not asked to approve the sale of the *Amazonia* and *Pantanal* and that the Schahin Group had not paid its debts before the sale.  Defendants thus knew or should have known, when they received the sale proceeds, that they were receiving wrongfully obtained property at the expense of the Schahin Group's other creditors.

75.     Plaintiff demands a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

1.   Awarding Plaintiff restitution in an amount to be determined at trial;

2.   Awarding Plaintiff prejudgment interest; and

3.   Such further relief as the Court deems just and equitable.

Dated:  July 13, 2021                              Respectfully submitted,

                                                   /s/ *Andrew E. Goldsmith*
                                                   Andrew E. Goldsmith
                                                   Derek T. Ho
                                                   Andrew M. Hetherington
                                                   KELLOGG, HANSEN, TODD, FIGEL &
                                                        FREDERICK, P.L.L.C.
                                                   1615 M Street, N.W., Suite 400
                                                   Washington, D.C. 20036
                                                   (202) 326-7900
                                                   agoldsmith@kellogghansen.com
                                                   dho@kellogghansen.com
                                                   ahetherington@kellogghansen.com

                                                   *Attorneys for Plaintiff*